# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In Re:  David W. Wagner

                Debtor

Chapter 7
No. 18-10071

---

|   |   |
|---|---|
| David Hilderbrand, David Kiderman,<br>Ryan Detzel, Mark Miller, John Hart,<br>Andrew Hatch, Stephen Forden, Edward<br>Stefanides, Chad Decker, Timothy Caver,<br>Barry Keenan, William Koch, Jan Mosholt,<br>Ponce Kenton, Gregory Siuciak, Vince<br>Schuessler and Melissa Fitzpatrick | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiffs | : |
| v. | :            A.P. No. 18- |
| David W. Wagner | : |
| Defendant | : |

---

## **COMPLAINT**

This complaint is brought for (i) a determination that obligations owed to the Plaintiffs by the Debtor-Defendant are non-dischargeable under Bankruptcy Code (11 U.S.C. §101, *et seq*. - - "Code") section § 523; and (ii) a judgment against the Defendant for the amounts owed to the Plaintiffs and for their attorneys' fees, costs and expenses, including those incurred in this action.

### **Parties**

      1.    Plaintiff, David Hilderbrand ("Hilderbrand"), is an individual and a resident of El Dorado Hills, California.

      2.    Plaintiff, David Kiderman ("Kiderman"), is an individual and resident of New

York City, New York.

3.     Plaintiff, Ryan Detzel ("Detzel"), is an individual and resident of Highland

Heights, Ohio.

4.     Plaintiff, Mark Miller ("Miller"), is an individual and resident of San Clemente,

California.

5.     Plaintiff, John Hart ("Hart"), is an individual and resident of Centerville, Virginia.

6.     Plaintiff, Andrew Hatch ("Hatch"), is an individual and resident of Norwich,

Connecticut.

7.     Plaintiff, Stephen Forden ("Forden"), is an individual and resident of Princeton,

New Jersey.

8.     Plaintiff, Edward Stefanides ("Stefanides"), is an individual and resident of

Canfield, Ohio.

9.     Plaintiff, Chad Decker ("Decker") is an individual and resident of Slatington,

Pennsylvania.

10.     Plaintiff, Timothy Caver ("Caver"), is an individual and resident of Missouri City,

Texas.

11.     Plaintiff Barry Keenan ("Keenan") is an individual and resident of Valencia,

California.

12.     Plaintiff, William Koch ("Koch"), is an individual and resident of Narberth,

Pennsylvania.

13.     Plaintiff, Jan Mosholt ("Mosholt"), is an individual and resident of Cary, North

Carolina.

14.     Plaintiff, Ponce Kenton ("Kenton"), is an individual and resident of Boulder,

Colorado.

15.    Plaintiff, Gregory Siuciak ("Siuciak"), is an individual and resident of Sewickley,

Pennsylvania.

16.    Plaintiff, Vince Schuessler ("Schuessler"), is an individual and resident of Naples,

Florida.

17.    Plaintiff, Melissa Fitzpatrick ("Fitzpatrick"), is an individual and resident of

Chapel Hill, North Carolina.

18.    Defendant, David W. Wagner ("Mr. Wagner"), is the debtor before this Court in

the above-captioned case, having filed a chapter 7 petition for relief with this Court on January

17, 2018.

### Jurisdiction

19.    This adversary proceeding is within this Court's jurisdiction pursuant to the

provisions of 28 U.S.C. §§157 and 1334 and the provisions of Local Rule LR Gen 109

(Bankruptcy) of the United States District Court of Rhode Island, and is a core proceeding under

28 U.S.C. § 157 (b)(2), (I) and (J).

### Entities and Related Parties

20.    3si Systems, LLC ("3si") is a limited liability company and is the successor in

interest to Downing Health Technologies, LLC ("Downing Health") and Surgical Safety

Solutions, LLC ("Surgical Safety").

21.    IVC Healthcom, LLC ("IVC") is a limited liability company and is now known as

Vox MediaData ("Vox").

22.    Downing Partners, LLC ("DP"), Downing Investment Partners, LP ("DIP") and

Downing Acquisition Partners, LLC ("DAP") are all limited liability companies and were the

majority equity owners and, through Mr. Wagner, had control over 3si and Vox.

23.     While it is unclear to the Plaintiffs how it transpired, apparently Cliniflow

Technologies, LLC ("Cliniflow") became the owner of 3si and Vox, with Hanover Squire

Capital Partners, LP ("Hanover") owning Cliniflow.  Cliniflow and Hanover are the alleged

successors to DP, DIP and DAP, and otherwise, through Mr. Wagner, controlled and/or were, at

all relevant times, responsible for the action, conduct, and failings of the entities identified in

paragraphs 20-22 above.

24.     Mr. Wagner is or was at all relevant times the Chairman and Managing Partner of

DP, Hanover and Cliniflow and the Chief Executive Officer of DIP, 3si and Vox, and otherwise

controlled its affairs.

25.     Michael H. Shaut ("Mr. Shaut") is or was at all relevant times the President,

Board Member and Senior Managing Director of DIP, DP, 3si and Vox.

26.     Richard Buckingham ("Mr. Buckingham") is or what at all relevant times the Co-

founder, Board Member and Vice-Chairman of DP, DIP, 3si and Vox.

27.     Marc M. Lawrence ("Mr. Lawrence") is or was at all relevant times the President

and Chief Operating Officer of DP, 3si and Vox.

28.     3si, Downing Health, Surgical Safety, Vox, DP, DIP, DAP, Cliniflow and

Hanover are sometimes collectively referred to herein as the "Companies."

29.     Mr. Wagner, Mr. Shaut, Mr. Buckingham, and Mr. Lawrence, are sometimes

collectively referred to herein as the "Respondents."

**<u>Nature of the Action</u>**

30.     This non-dischargeability and related action arises out of fraud and a Ponzi

scheme perpetrated and perpetuated by Mr. Wagner and others associated with  him and with

entities he owned and/or otherwise controlled, or with which he was and/or remains affiliated.

31.     Mr. Wagner and the other Respondents recruited and induced the Plaintiffs to invest in and be employees of the Companies, doing so through false and fraudulent representations and omissions of material facts, including those in private placement memoranda ("PPM's") created or approved by Mr. Wagner, with the Plaintiffs thereafter entering into employment agreements with one or more of the Companies, which provided for a promised salary, commission, bonus, and expense reimbursement to the Plaintiffs as part of their employment.

32.     As a condition to the Plaintiffs' employment, however, they were required to make an investment of $150,000 - $250,000 in either Cliniflow, DIP, or 3si or one of their predecessors.

33.     All of the Companies were, at all relevant times, controlled and/or owned by Mr. Wagner and other of the Respondents.

34.     The Plaintiffs, induced by the promises of salaries, commission and bonuses, entered into employment agreements with one of the Companies, and each Plaintiff also made the required $150-250,000 investment into either Cliniflow, DIP, or 3si or their predecessor(s).

35.     At the time Plaintiffs entered into the employment agreements and made their mandatory $150-250,000 investments, the Companies had already ceased paying the then-current employees their salaries, in some instances having already been sued for such failures, and used Plaintiffs' investments to pay past, unpaid compensation that was due to those then-current employees, and on other occasions wrongfully diverted and siphoned off those investments.

36.     Almost immediately after Plaintiffs began their employment with the Companies,

the Companies ceased paying Plaintiffs their contractually required salaries, and failed to

reimburse them for their expenses and to provide them with promised health insurance, in direct

violation of their employment agreements.

37.    Additionally, Mr. Wagner and the other Respondents committed fraud by

knowingly providing materially false and misleading information regarding the Companies.

Specifically, the Respondents offered PPM's and other written materials that contained

numerous material false and fraudulent misrepresentations and omissions concerning the

Companies' business, the progress of the Companies' products, prior rounds of funding and

investments, the Companies' financial condition, and the vendors with whom the Companies

were doing  business, including those misrepresentations noted in paragraph 49 hereof.

38.    Mr. Wagner and the other Respondents, at all relevant times, had full ownership

and/or control over the Companies and were well aware of the tactics, material

misrepresentations, and false and fraudulent statements being made to the Plaintiffs about the

Companies and otherwise in order to recruit them and others as new investors.

39.    Mr. Wagner and the other Respondents were fully aware at all relevant times that

the Companies were incapable of paying those they were attempting to recruit as employees and

investors but continued to put forth false statements and misrepresentations in order to recruit

new investors and to continue and perpetuate their Ponzi scheme.

**Plaintiffs' Recruitment and Respondents' Representations**

40.    Beginning in late 2014 through 2016, Mr. Wagner and the other

Respondents began actively recruiting Plaintiffs to invest in the Companies, and to

become employees of the Companies.

41.    Mr. Wagner and the other Respondents fraudulently pitched the Companies to

the Plaintiffs as presenting an opportunity for them to work for a venture capital firm, with

Plaintiffs having the opportunity to sell several different medical and medical device

products which were represented to them as having already been commercialized and

generating revenue, and with Plaintiffs' commissions from the sale of these products being

uncapped. These representations and statements were false.

42.     During this pitching and recruitment process, Mr. Wagner and the other

Respondents offered materials that falsely represented, among other things, that:

a.  The Companies had certain distribution agreements in place with medical device companies, including, but not limited to, Intelesense, Vectracorp and Flexlife;

b.  The Companies' portfolio company, Innovative Medical Equipment, had $4.0 million in revenue;

c.  The Companies' portfolio company, Surgical Safety, already had five (5) beta sites up and running, and that they were being used in a clinical setting;

d.  The Companies' portfolio company, Surgical Safety, had $5.0 million in revenue in the pipeline;

e.  The Companies' portfolio company, Surgical Safety, was in the process of negotiating 38 revenue-producing contracts;

f.  The Companies had raised $25.0 million in capital from investors, excluding recruited employees who had invested as a condition of their employment;

g.  The Companies had millions of dollars of cash on hand in order to fund its operations;

h.  Medrobotics Corporation was a portfolio company of the Companies; and

i.  The Companies had secured a $4.0 million investment, which could be used as a "lever" at any time to infuse the Companies with capital, as necessary.

43.     Although never advised of this, the Plaintiffs' investments were used by the

Companies and Mr. Wagner and the other Respondents to pay overdue wages then due to both

current and former employees of the Companies, and/or were used to pay separation/settlement

agreements with former employees of the Companies, as the Respondents needed a constant flow

of money from new investments in order to pay such overdue wages.

44.    Further, the products alleged to have been commercialized by the Respondents, in

fact, had not been commercialized and contrary to the representations by Mr. Wagner and the

other Respondents, there were essentially no commercialized products for the Plaintiffs to sell

and on which to earn a commission.

45.    In addition, Mr. Wagner improperly diverted, siphoned off and used DIP and DP

funds and invested funds for personal expenses and personal purposes, including transferring

certain of such funds to his wife, who did no work for and had no involvement in the Companies.

DIP reported a loss of $5,249,593 in 2014, while Mr. Wagner was paid $792,042 in

compensation that year by DIP.  Mr. Wagner also liquidated partnership units in DIP, owned by

his family trusts.  This resulted in $450,000 leaving DIP and going to Mr. Wagner and the

"Wagner Family Trust."

46.    The Respondents relied on the recruiting of new employees and their mandatory

$150,000+ investments into the Companies to fund their "operations" and "enterprise."

47.    Mr. Wagner and the other Respondents were aware at all relevant times that

"earlier-in" employees were not being paid their salary or other promised benefits and, at the

time that he and others were recruiting them, that "new recruits" similarly would not be paid

their promised salary and benefits upon their investment being made.

48.    Mr. Wagner was further aware at all relevant times that in order to pay employees

their promised salaries, money from new investments was needed.

49.    Almost immediately after Plaintiffs began their employment, the Respondents

ceased paying the Plaintiffs their contractually required salaries, and failed to reimburse them for

their expenses and to provide them with health insurance.

50.    The Respondents made false statements and misrepresentations to the Plaintiffs that Respondents knew were false at the time made, or made them with reckless indifference to the truth, in order to induce and recruit them into investing in the Companies.

51.    The Plaintiffs relied, and reasonably relied, on such false statements and misrepresentations when they made their investments.

### Employment with Companies

52.    After Plaintiffs made their investments in the Companies, they learned that there were no commercialized, saleable products to sell, and thus no way to earn the commissions or bonuses provided for in their respective employment  agreements.

53.    Plaintiffs would later learn that they were not alone in not being paid their salaries as the then-current Companies' employees, had not been paid their salaries or expenses for a significant period of time prior to Plaintiffs having been induced to make their investments, a fact of which Mr. Wagner was well aware at all relevant times.

54.    Even more egregious, the "earlier-in" employees of the Companies were told by the Respondents not to mention this fact to new recruits, including Plaintiffs, and to conceal the fact that such current employees were not receiving their salaries and other  compensation, in order to have new recruits not be informed of the truth and not be dissuaded from putting their $150-250,000 investments into the Companies.

55.    In March 2015, Mr. Wagner changed the business model of the Companies. Specifically, the original model called for six (6) sales positions and six (6) business development positions. However, Mr. Wagner intended to hire twenty-four sales/business development positions.

56.    Upon information and belief, the purpose of such increase in the amount of sales/business development positions was to obtain an additional $250,000 in investments into the Companies from each investor, and continue funding the ongoing Ponzi scheme at a higher per-investor level.

57.    Mr. Wagner, directly and through others, forwarded misleading and fraudulent information regarding the capitalization of the Companies in order to mislead the Plaintiffs into thinking that the Companies were financially sound.

58.    Mr. Wagner was aware at all relevant times that the information provided to the Plaintiffs regarding the financial condition of the Companies was false and otherwise inaccurate and that employees were not being paid as promised.

59.    Mr. Wagner and the other Respondents, despite being aware of the financial condition of the Companies and the inability of the Companies to pay the Plaintiffs, encouraged the Plaintiffs to not discuss with other potential investors that the Plaintiffs were not being paid, and the Respondents continued to provide false and misleading information about the financial condition of the Companies in order to keep the Plaintiffs from leaving.

60.    By way of example, on December 27, 2015, Mr. Wagner sent a memorandum to the Companies' employees, including Plaintiffs, stating, *inter alia,* that "any individual that made an original investment of $250,000 in either Downing Health Technologies or Surgical Safety Solutions ... would yield a return of approximately $1.9 million to the individual investor." This statement was false.

61.    This false representation by Mr. Wagner was made with the intent of inducing Plaintiffs to continue working, to assuage what were the well-founded concerns of the Companies' employees over their failure to receive salaries, and to conceal the fact that

Respondents were engaged in what an arbitrator looking at this matter concluded earlier this year was "a nationwide Ponzi scheme with an employment twist."

62.     Upon information and belief, the Respondents knew that mandating that employees invest in the Companies would act as an "anchor" to keep Plaintiffs employed, despite their not receiving their salaries or expenses, or being able to earn  commissions.

63.     Upon information and belief, while Respondents were wrongfully failing to pay Plaintiffs and other employees' salaries and expenses, for which judgments have been sought or entered against Mr. Wagner and others, Mr. Wagner was receiving $60,000 per month in "consulting" fees and wrongfully diverting other monies from the Companies.

**The Ponzi Scheme**

64.     Just as in a classic Ponzi scheme new investment dollars are used to pay older, earlier-in investors, Mr. Wagner and the other Respondents used the money invested by new employees, which was mandated as a condition of their employment, to pay back-wages due to Companies' employees, and also to benefit themselves.

65.     When Plaintiffs invested in the Companies, what remained of their investments, after money had been wrongfully diverted and siphoned off by Mr. Wagner, including to pay legal fees and costs of unrelated companies, was used to pay the Companies' employees who had not been paid for some time.

66.     When Plaintiffs justifiably complained about not receiving their salaries, Mr. Wagner and the other Respondents told Plaintiffs to, themselves, go find more investors to invest in the Companies.

**Federal District Court Litigation**

67.     In 2016, Plaintiffs Hilderbrand, Kiderman, Detzel and Miller filed a complaint

in the United States District Court for the Southern District of New York against Mr.

Wagner, the Companies and others entitled *David Hilderbrand, David Kiderman, Ryan Detzel,*

*and Mark Miller v. Downing Investment Partners, LP et als.* (16-cv-04040) (the "District Court

Case"), through which they have made allegations of fraud, fraudulent inducement, negligent

misrepresentation, and violation of federal securities law by Mr. Wagner and the other

Respondents.

68.     The District Court Case remains pending.

**Arbitration Award Case No. 17-0001-3167 (the "3167 Arbitration")**

69.     In 2017, Plaintiffs Decker, Caver, Keenan, Koch, Mosholt, Kenton, Siuciak,

Schuessler and Fitzpatrick (collectively, the "3167 Plaintiffs") requested arbitration against DIP,

DP, DAP, Hanover, Cliniflow, Mr. Wagner, Mr. Shaut, Mr. Buckingham, Mr. Lawrence, and the

Wagner Family Educational Trust y/t/d 1/20/2004, among others, for fraud, fraud in the

inducement, misrepresentations and other claims.

70.     The 3167 Arbitration was adjudicated over a period of three months and prior to

the Arbitrator making his finding of fact and conclusions of law on March 12, 2018, Mr. Wagner

filed his bankruptcy petition, thereby triggering the "automatic stay."

71.     The Arbitrator in that matter, while excluding Mr. Wagner from his decision,

stated that "… but for the bankruptcy filing, Wagner would have been found jointly and

severally liable under this [fraud] claim and all others…" (at 29, ¶ 94), and found the other

arbitration defendants liable for fraud including fraud in the inducement for their

misrepresentations, fraudulent statements, and other fraudulent conduct. A copy of the

Arbitrator's decision and Award in the 3167 Arbitration is attached hereto as <u>Exhibit A.</u>

72.     The Arbitrator there stated that: "The absence of his [Mr. Wagner] name from

these liability [for fraud] determinations is not intended as an exoneration but only a deferral

pending resolution of the bankruptcy." Exhibit A; Award Of The Arbitrator, March 12, 2018 at

29, ¶ 94.

73.     In his decision and Award, the Arbitrator concluded that, "The evidence is

overwhelming that Respondents' entire employment process was a scheme intended solely to

entice new employee-investors, knowing their money would be redirected to unstated purposes

that would not benefit the company into which the money was invested." Exhibit A at 3, ¶ 9.

**Arbitration Award CA -16-0005-6312 (the "6312 Arbitration")**

74.     In 2016, Plaintiffs Hart, Hatch, Forden and Stefanides (collectively, the "6312

Plaintiffs") requested arbitration against DIP, DP, Hanover, Cliniflow, 3SI Systems, LLC, Mr.

Wagner, Mr. Auda, Mr. Rice, Mr. Shaut, Mr. Buckingham, Mr. Lawrence, Mr. Griffin and the

Wagner Family Educational Trust y/t/d 1/20/2004 for fraud and alleged violations of the

employment agreement entered into by the referenced 6312 Plaintiffs.

75.     The 6312 Arbitration was adjudicated over a period of eleven (11) months and the

Arbitrator there, in her November 2, 2017 Opinion and Award, found in favor of the 6312

Plaintiffs and against all the arbitration defendants, including Mr. Wagner, for making and

providing false and misleading statements and information concerning the financial and

operational status of the defendant entities.

76.     The Arbitrator there concluded that the claimants had catalogued "the musical

chairs that was occurring among the corporate entities" and that "Wagner [Mr. Wagner] was

without dispute the chief initiator of the schemes." Exhibit B, Arbitration Opinion and Award at

12-13.

77.     Specifically, the Arbitrator found that the arbitration defendants, including Mr.

Wagner, had engaged in common law fraud and fraudulent inducement in dealing with the

claimants there.

78.     In making her determination, the Arbitrator stated:

. . . Respondents Wagner, Shaut, Lawrence and Buckingham dominated and
controlled all Respondent corporate entities, they commingled purpose, status and
function of the entities with the intent and effect of utilizing them as a single
functioning entity, to the financial advantage of the controlling individuals and in
disregard of the corporate obligations to other investors and employees.  I find
that various entities, controlled by the four individuals continued to successfully
solicit new employee/investors, including the Claimants intentionally or in
reckless disregard for the ability of the entities to satisfy their obligations to
existing employees/investors through the use of false and misleading information
concerning the financial and operational status of the entities.

Exhibit B, 6312 Arbitration Opinion and Award at 4, ¶ II. Overarching Findings of Fact and
Law.

### **Damages**

79.     The Arbitrator in the 3167 Arbitration made affirmative findings of fraud and

awarded more than $6.0 million in punitive damages (Exhibit A) and also awarded the 3167

Plaintiffs the following:

    a.  Koch is due $67,595.00 in salary/wages, $14,700.00 in healthcare costs,
$12,216.00 in unpaid vacation accrual, $1,079.00 in expenses, a bonus of
$54,698.77 and return of his $250,000 investment.  Total Due Koch:
$400,284.77.

    b.  Caver is due $68,409.00 in salary/wages, $7,350.00 in healthcare costs,
$8,750.00 in unpaid vacation accrual, a bonus of $46,510.23 and return of
his $200,000 investment.  Total Due Caver: $331,019.23.

    c.  Decker is due $77,625.00 in salary/wages, $8,400.00 in healthcare costs,
$8,625.00 in unpaid vacation accrual, $1,319.00 in expenses, a bonus of
$36,895.83 and return of his $250,000 investment.  Total Due Decker:
$382,864.83.

    d.  Keenan is due $75,455.00 in salary/wages, $7,350.00 in healthcare costs,
$6,364.00 in unpaid vacation accrual, a bonus of $29,909.09 and return of
his $200,000 investment.  Total Due Keenan: $319,078.09.

e. Siuciak is due $76,667.00 in salary/wages, $7,350.00 in healthcare costs, $5,227.00 in unpaid vacation accrual, $282.00 in expenses, a bonus of $32,200.00 and return of his $200,000 investment.  Total Due Siuciak: $321,949.61.

f. Kenton is due $69,734.00 in salary/wages, $7,350.00 in healthcare costs, $7,121.00 in unpaid vacation accrual, $150.00 in expenses, a bonus of $33,834.66 and return of his $200,000 investment.  Total Due Kenton: $318,189.66.

g. Mosholt is due $71,000.00 in salary/wages, $8,400.00 in healthcare costs, $6,000.00 in unpaid vacation accrual, $9,943.00 in expenses, a bonus of $28,000.00 and return of his $250,000 investment.  Total Due Mosholt: $373,343.00.

h. Fitzpatrick is due $57,273.00 in salary/wages, $7,350.00 in healthcare costs, $4,545.00 in unpaid vacation accrual, $666.00 in expenses, a bonus of $20,045.55 and return of her $250,000 investment.  Total Due Fitzpatrick: $339,879.55.

i. Schuessler is due $25,758.00 in salary/wages, $4,200.00 in healthcare costs, $1,288.00 in unpaid vacation accrual, $1,327.00 in expenses, a bonus of $10,303.03 and return of her $200,000 investment.  Total Due Schuessler: $242,875.03.

80.     The Arbitrator in the 6312 Arbitration also made findings of fraud and awarded over $1.1 million in punitive damages against Mr. Wagner and others (Exhibit B at 22) and further awarded the 6312 Plaintiffs the following:

a. Hatch is awarded judgment in his favor for violation of the Connecticut State Wage Statute in the amount of $270,711.30, plus AAA costs in the amount of $6,596.88 and legal fees and costs of $94,748.95 against DP, DIP, 3si, Cliniflow, Hanover, Mr. Wagner, Mr. Buckingham, Mr. Lawrence and Mr. Shaut, jointly and severally, for a total award of $372,057.13.

b. Forden is awarded judgment in his favor for violation of the New Jersey Wage Payment Law in the amount of $141,688.84 against DP, DIP, 3si, Cliniflow, Hanover, Mr. Wagner, Mr. Buckingham, Mr. Lawrence and Mr. Shaut, jointly and severally.

c. Stefanides is awarded judgment in his favor for violation of the Ohio Prompt Pay Act in the amount of $39,641.13, plus liquidated damages of six percent, in the amount of $2,378.47, against DP, DIP, 3si, Cliniflow, Hanover, Mr. Wagner, Mr. Buckingham, Mr. Lawrence and Mr. Shaut, jointly and

severally, for a total award of $42,019.60.

    d.   The 6312 Plaintiffs were also awarded $800,000 against DP, DIP, 3si, Cliniflow, Hanover, Mr. Wagner, Mr. Buckingham, Mr. Lawrence and Mr. Shaut, jointly and severally.

**Count I**
**(Non-Dischargeability of Debt Pursuant to Code § 523(a)(6)**

81.    The Plaintiffs restate the allegations contained in paragraphs 1 through 80 of their Complaint as is fully set forth herein.

82.    Mr. Wagner's actions and conduct as they relate to the Plaintiffs were deliberate and intentional, and such actions and conduct was intended to, or substantially likely to, or substantially certain to, cause injury to the Plaintiffs and to their property.

83.    Mr. Wagner, by his actions, failings and conduct, willfully and maliciously caused injury to the Plaintiffs and to their property, and the Plaintiffs and their property have suffered injuries as a result of Mr. Wagner's actions, failings, and conduct.

84.    The actions, failings, and conduct of Mr. Wagner are such as to entitle the Plaintiffs to a determination that their claims against him are non-dischargeable under Code § 523(a)(6).

85.    The Plaintiffs fully reserve the right to request that this Court grant and accord r*es judicata* and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive effect in this adversary proceeding to the  findings, rulings, conclusions and determinations made in the 3167 and 6312 Arbitrations, the District Court Case and in any other proceedings involving Mr. Wagner.

## Count II
## (Non-Dischargeability of Debt Pursuant to Code § 523(a)(2)(A))

86.     The Plaintiffs restate the allegations contained in paragraphs 1 through 85 of their

Complaint as is fully set forth herein.

87.     The Plaintiffs are also entitled to a determination of non-dischargeability of their

claims under Code § 523(a)(2)(A) because their claims arose from and otherwise were a direct

result of Mr. Wagner's fraud, including his obtaining money, property and services by fraud,

including actual fraud, and by false pretenses and false representations.

88.     The Plaintiffs fully reserve the right to request that this Court grant and accord r*es

judicata* and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive

effect in this adversary proceeding to the  findings, rulings, conclusions and determinations made

in the 3167 and 6312 Arbitrations, the District Court Case and in any other proceedings

involving Mr. Wagner.

## Count III
## (Non-Dischargeability of Debt Pursuant to Code § 523(a)(4))

89.     The Plaintiffs restate the allegations contained in paragraphs 1 through 88 of their

Complaint as is fully set forth herein.

90.     Mr. Wagner owed a fiduciary duty to the Plaintiffs that included his exercise of

utmost care, loyalty and good faith in his conduct toward and dealings with the Plaintiffs.

91.     At all relevant times, Mr. Wagner had control over and ownership of the

Companies, and he owed fiduciary duties to the Plaintiffs in their capacities as employees and

investors.

92.     Mr. Wagner breached those duties owed to the Plaintiffs by his fraudulent

conduct, including his false and misleading representations, both made by him to the Plaintiffs

and those caused by him to be made by others to the Plaintiffs, identified in this Complaint, including those regarding the business, operations, prospects and financial condition of the Companies, and by his wrongfully defalcating and diverting money of one, more, or all of the Companies, including for personal and other inappropriate and wrongful purposes.

93.     The actions, failings and conduct of Mr. Wagner are such as to entitle the Plaintiffs to a determination that their claims against him are non-dischargeable under Code § 523(a)(4).

94.     The Plaintiffs fully reserve the right to request that this Court grant and accord r*es judicata* and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive effect in this adversary proceeding to the  findings, rulings, conclusions and determinations made in the 3167 and 6312 Arbitrations, the District Court Case and in any other proceedings involving Mr. Wagner.

## Count IV
### (Non-Dischargeability of Debt Pursuant to Code § 523(a)(2)(B)

95.     The Plaintiffs restate the allegations contained in paragraphs 1 through 94 of their Complaint as is fully set forth herein.

96.     Mr. Wagner, in order to entice the Plaintiffs into investing into the Companies, used, or caused, or allowed to be used and to be published and to be provided to Plaintiffs false and misleading written statements, including in PPM's concerning the business operations, prospects and financial condition of the Companies.

97.     At the time such written statements were presented to the Plaintiffs, Mr. Wagner knew the information therein was materially false.

98.     The Plaintiffs reasonably relied on this information when determining whether to

make an investment and become employees of the Companies.

99.     Mr. Wagner was aware, at the time such written statements and information were
presented to the Plaintiffs that it was materially false, and the purpose of making such false
representations was to deceive the Plaintiffs into making an investment and becoming an
employee of the Companies.

100.    The actions, failings and conduct of Mr. Wagner are such as to entitle the
Plaintiffs to a determination that their claims against him are non-dischargeable under Code §
523(a)(2)(B).

101.    The Plaintiffs fully reserve the right to request that this Court grant and accord r*es
judicata* and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive
effect in this adversary proceeding to the  findings, rulings, conclusions and determinations made
in the 3167 and 6312 Arbitrations, the District Court Case and in any other proceedings
involving Mr. Wagner.


**Count V**
**Judgment for Amount Owed**

102.    The Plaintiffs restate the allegations contained in paragraphs 1 through 101 of
their Complaint as is fully set forth herein.

103.    Mr. Wagner is obligated to the Plaintiffs for various amounts, including to the
6312 and 3167 Plaintiffs in the awarded amounts set forth above.

104.    The Plaintiffs, including the 6312 and 3167 Plaintiffs, request that this Court enter
orders and judgments (i) determining that the Plaintiffs' claims are non-dischargeable and (ii)
also as to the specific amounts due to each of the Plaintiffs by Mr. Wagner, and (iii) that this
Court further enter such orders and judgments, and direct that such process as may be needed

issue from it, as may be required to allow the  Plaintiffs, including the 6312 and 3167 Plaintiffs,

to collect and otherwise pursuing the collection of such amounts against Mr. Wagner.

105.    The Plaintiffs fully reserve the right to request that this Court grant and accord r*es*

*judicata* and collateral estoppel effect, and other applicable issue-preclusive and claim-preclusive

effect in this adversary proceeding to the  findings, rulings, conclusions and determinations made

in the 3167 and 6312 Arbitrations, the District Court Case and in any other proceedings

involving Mr. Wagner.

WHEREFORE, the Plaintiffs request that the Court determine, declare and enter

judgment for the Plaintiffs as follows:

A.    Declare that the Plaintiffs' claims against Mr. Wagner are non-dischargeable

under Bankruptcy Code §523(a)(6);

B.    Declare that the Plaintiffs' claims against Mr. Wagner are non-dischargeable

under Bankruptcy Code §523(a)(2)(A);

C.    Declare that the Plaintiffs' claims against Mr. Wagner are non-dischargeable

under Bankruptcy Code §523(a)(2)(B);

D.     Declare that the Plaintiffs' claims against Mr. Wagner are non-dischargeable

under Bankruptcy Code §523(a)(4);

E.    Declare that Mr. Wagner should pay the Plaintiffs' costs and attorneys' fees

incurred in this adversary proceeding;

F.      Declare that Mr. Wagner's obligations to the Plaintiffs as outlined herein are due

and owing by him in the amount set forth above or those to be determined by this Court or

through the pending arbitration and/or federal district court proceedings or other proceedings,

plus interest, costs and attorneys' fees, and enter judgment for the Plaintiffs in these amounts, or

authorize the same to be issued through arbitrations and other court proceedings;

G       Declare that Mr. Wagner should pay the Plaintiffs' costs and attorneys' fees

incurred in this adversary proceeding; and

H.      Grant such other and further relief as the Court deems just.


David Hilderbrand, David Kidermen, Ryan Detzel,
Mark Miller, John Hart, Andrew Hatch, Stephen Forden,
Edward Stefanides, Chad Decker, Timothy Caver, Barry
Keenan, William Koch, Jan Mosholt, Ponce Kenton,
Gregory Siuciak, Vince Schuessler and Melissa Fitzpatrick

By their Attorneys,

April 20, 2018                    */s/ Matthew J. McGowan and Elizabeth A. Lonardo*
Matthew J. McGowan, Esquire (Bar No. 2770)
Elizabeth A. Lonardo, Esquire (Bar No. #7714)
Salter McGowan Sylvia & Leonard, Inc.
321 South Main Street, Suite 301
Providence, RI 02903
401.274.0300
mmcgowan@smsllaw.com
elonardo@smsllaw.com


F:\contents\Wagner\Bankruptcy\Adversary Proceeding\Non-Disch-Complaint 4.17.2018.rc1 MJM Redline 4-20-2018.docx